suggestion of Traub, recommended Gold for the position. After
conducting interviews, the Debtors hired Gold on June 11, 2001,
as wind-down coordinator and, after obtaining insurance, as their
president and chief executive officer.

In addition, Alber asserts that TBF has failed to disclose
its relationship with Fleet Retail Finance, an affiliate of
FleetBoston. That failure to disclose is significant, Alber
asserts, because the PEDC is pursuing litigation against Goldman
and FleetBoston Financial arising from the Debtors' initial
public offering. TBF was one of the firms representing the PEDC
in that case.[8]

At no time did Gold or TBF reveal any of these
relationships. Alber asserts that TBF's failure to disclose
these relationships violates the disclosure requirements of Rule
2014 and constitutes a conflict of interest warranting
disgorgement of all fees earned in the case. He also asserts
that the failure to disclose constitutes perjury and obstruction
of justice mandating a referral of this case to the U.S.
Attorney.

a. <u>Failure to Disclose</u>

TBF admits that it did not disclose the relationship with

_____

[8]  As a result of the Alber Motion, TBF has withdrawn as counsel
in the IPO litigation and the PEDC is represented by others in
that suit.

ADA.  At the time of their retention, TBF notes that there was no
connection with ADA to be disclosed.  Further, even after the
Debtor hired Gold, TBF asserts that no disclosure was mandated,
because TBF has no relationship with ADA and ADA is not involved
in this case.  ADA is an entity in which Traub, not TBF, has an
interest.  TBF asserts it is not a member of and never obtained
any income from ADA.  Further, the Debtors retained Gold, not
ADA.  Therefore, TBF asserts the "connection" between this case
and ADA is remote.

TBF did have a direct relationship with Gold, however,
having hired him as a consultant on several of its cases.  TBF
does admit, in hindsight, that it should have disclosed its
relationship with Gold when the potential employment of Gold by
the Debtors arose.  It contends that its failure to do so was a
mistake and not intentional wrongdoing.  It argues that if it had
intended to keep its relationship secret, it would not have
disclosed it in the many cases in which ADA and TBF were
involved.  See, e.g., Bonus Stores, No. 03-12284; In re Homelife
Corp., No. 01-2412.

The duty of professionals to disclose is an ongoing one.
Fed. R. Bankr. P. 2014(a); L. R. 2014-1(a).  The Court and
parties in interest rely on the duty to disclose to help them
monitor potential and actual conflicts.  Thus, the duty to

36

disclose is broader than the disclosure of actual conflicts, it mandates the disclosure of all connections a professional may have with the other parties in the case.

> All facts that may have any bearing on the disinterestedness of a professional must be disclosed. Consistent with the duty placed on the professional, it is the responsibility of the professional, not of the court, to make sure that all relevant connections have been brought to light. . . . So important is the duty of disclosure that the failure to disclose relevant connections is an independent basis for the disallowance of fees or even disqualification.

Leslie Fay, 175 B.R. at 533.  See also, BH & P, 949 F.2d at 1317-18 (noting that professional may not leave court to search the record for undisclosed relationships); Jore, 298 B.R. at 725-26 (holding that professional must disclose all connections; he may not pick and choose which to disclose and which to ignore as unimportant).

Failure to disclose may result in disallowance of fees or disqualification, even if the failure was negligent and not willful.  See, e.g., BH & P, 949 F.2d at 1318; Jore, 298 B.R. at 729.  Where the failure to disclose is willful, disallowance of fees is almost assured.  In re Crivello, 134 F.3d 831, 836-37 (7th Cir. 1998) (stating that "a bankruptcy court should punish a willful failure to disclose the connections required by Fed. R. Bankr. P. 2014 as severely as an attempt to put forth a fraud on the court.").  Accord In re ACandS, Inc., 297 B.R. 395, 405

37

(Bankr. D. Del. 2003) (disallowing nunc pro tunc retention and
ordering disgorgement of all fees of professional which willfully
concealed relationships and potential and actual conflicts).

> b.  Disqualification

TBF asserts that there is no basis under the Code for its
disqualification as counsel to the Committee on the facts of this
case.  It notes preliminarily that section 327(a) is not
applicable because it was counsel to the Committee not counsel to
the Debtors.  11 U.S.C. § 327(a).  Instead, it asserts that the
proper standard for retention of counsel for a committee is
section 1103 which provides:

> An attorney . . . employed to represent a committee
> under section 1102 of this title may not, while
> employed by such committee, represent any other entity
> having an adverse interest in connection with the case.
> Representation of one or more creditors of the same
> class as represented by the committee shall not per se
> constitute the representation of an adverse interest.

11 U.S.C. § 1103(b).  This provision is different from section
327(a) because (unlike counsel for the debtor) it does not
require that counsel to a committee be disinterested.

Section 1103(b) does, however, require that counsel for the
committee not hold or represent an adverse interest in connection
with the case.  An adverse interest is "any economic interest
that would tend to lessen the value of the bankruptcy estate or
that would create either an actual or potential dispute in which

38

the estate is a rival claimant." TWI Int'l, 162 B.R. at 675;

National Liquidators, 182 B.R. at 192.

TBF asserts that there is no evidence of any actual or

potential conflict between its representation of the Committee

and the Debtors' hiring of Gold.  It argues that Gold's

employment by the Debtors was completely unrelated to his work

for ADA (or TBF).  ADA had no involvement with this case, and,

even if it did, TBF had no interest in ADA.  No one at TBF, other

than Traub, had an interest in ADA.  While the relationships may

raise an appearance of a conflict, they are not actual conflicts

and disqualification is not warranted.  See, e.g., In re Marvel

Entm't Group Inc., 140 F.3d 463, 476 (3d Cir. 1998) (holding that

disqualification cannot be premised on the mere appearance of

conflict alone though court has discretion to disqualify counsel

with a potential conflict and must disqualify counsel with an

actual conflict).

### 2.  UST Motion and Settlement

The UST Disgorgement Motion was based, like Alber's, on

TBF's failure to disclose the relationship TBF and Traub had with

Gold.  Even if, as TBF asserts, the relationship did not

constitute a conflict or adverse interest, the UST asserted that

it had to be disclosed.  Cf., In re CF Holding Corp., 164 B.R.

799, 806-07 (Bankr. D. Conn. 1994) (holding that debtor's counsel

should be sanctioned, by a reduction in fees awarded, for failure to disclose another professional's conflict of interest).

Shortly after filing the Disgorgement Motion, the UST settled that dispute. Under the settlement, TBF agreed to disgorge $750,000 of the fees received by it in this case. That amount represents approximately 50% of the total post-petition, pre-confirmation fees earned by TBF.

Settlements are favored as a means of minimizing litigation, expediting administration of estates, and providing for the efficient resolution of bankruptcy cases. In re Martin, 91 F.3d 389, 393 (3d Cir. 1996). To approve a settlement, the Court must consider four criteria: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Id. Because the Disgorgement Motion is a sanctions motion, the Court should also consider the deterrent value that approval of the Settlement would have. Pearson, 200 F.3d at 42 & n.7, quoting John's Insulation, Inc. v. L. Addison & Assoc., Inc., 156 F.3d 101, 110 (1st Cir. 1998) ("The purpose of sanctions, moreover, is not merely to penalize violations of court procedures, but also to deter future violations by other parties, and thus sanctions do

not have to be strictly proportional to the severity of a given party's violations.").

Consideration of all these factors convinces the Court that approval of the Settlement is appropriate in this case. There is a strong probability that the UST will succeed in part on its Disgorgement Motion. TBF has admitted its failure to disclose its relationship with Gold. As discussed above, TBF vehemently disputes that the relationship with Gold ever constituted an actual conflict. Therefore, the Court concludes that there is a risk to both sides if this issue is litigated.

There is no suggestion that there will be any difficulty in collecting any judgment which the UST may obtain on its Disgorgement Motion. TBF is an established bankruptcy firm. It is aware that its failure to obey a court order of disgorgement in a bankruptcy case would have serious effects on its ability to practice in this Court or any other Bankruptcy Court in the future.

While the litigation is complex, the settlement will not save any expenses because Alber's Motion is virtually identical to the Disgorgement Motion. Discovery has been conducted and a full hearing has been held on Alber's Motion. Therefore, no savings are attendant to approval of the Settlement.

41

The paramount interests of creditors are served by approval of the Settlement, because the Court finds that it is a reasonable penalty for the transgression committed by TBF.

The Settlement also furthers the deterrent goal of a sanctions motion. The Court is convinced that the ordeal of defending the Alber Motion, coupled with the significant repayment of fees earned, will cause TBF to assiduously follow the disclosure requirements of the Code and Rules in the future. The settlement also serves as a "lighthouse" to others warning them to avoid the "rocks" of non-disclosure.

Consequently, the Court will grant the UST Motion for approval of the Settlement with TBF and will deny the Alber Motion to the extent it seeks to impose any additional penalty on TBF.

D.   Barry Gold

Alber also alleges that Gold should be disqualified and ordered to disgorge all fees received in this case because of his undisclosed relationship with TBF, ADA and Traub. Alber asserts that Gold: (1) had numerous conflicts of interest; (2) breached his duty of loyalty to the Debtors; (3) violated section 327(a) and Bankruptcy Rule 2014; (4) committed perjury and other bankruptcy crimes; and (5) wasted estate assets. Gold denies all of the allegations.

1.   Conflicts of Interest

Alber alleges that Gold had numerous conflicts of interest which should have prevented him from serving as the Debtors' CEO and president.  Alber asserts that the relationships among TBF, Traub, Gold and ADA constituted an actual conflict of interest that had to be disclosed and would have disqualified Gold from being retained by the Debtors.

Gold acknowledged that he has a relationship with counsel for the Committee but denies that it was a disabling conflict of interest.  Gold argues specifically that his relationships with ADA, TBF and Traub did not create a conflict of interest.  He was hired by the Debtors in this case, ADA was not.  Therefore, Gold asserts that there was no conflict to be disclosed.

Gold seeks to distinguish this case from the Coram case.  In re Coram Healthcare Corp., 271 B.R. 228, 236 (Bankr. D. Del. 2001).  In Coram, the debtor's CEO had a written consulting agreement with one of the largest creditors by which he was paid $1 million in consulting fees.  Though the CEO insisted that the relationship was unrelated to the bankruptcy case, there was little evidence of what the CEO did to earn the fee, other than his work for the debtor.  Further, there was significant evidence that the CEO caused the debtor to take actions favorable to the

creditor that were not in the best interest of the debtor.[9]

The Court agrees that this case is distinguishable from the Coram case. The business relationship between Gold and Traub involved the split of profits from ADA. ADA earned its fees from work performed by Gold and/or Traub when it was retained in bankruptcy cases. Therefore, unlike the contract in Coram, Gold was not receiving compensation from Traub simply for "consulting" with him or otherwise doing his bidding. Gold earned compensation from ADA for work performed by ADA.

Further, Gold's business relationship is with a professional in the case, not with a creditor. ADA and Traub have no direct claim against the Debtors in this case and, therefore, there is less possibility that they will pressure Gold to promote their personal interests over the interests of other creditors in the case. In addition, TBF is acting as counsel for the Committee and has a fiduciary duty to all creditors. This is significantly different from acting as counsel for one individual creditor or group of creditors.

Furthermore, the instant case is a liquidation case where the interest of the Debtors and the creditors is the same: to

---

[9] An example is the payment of interest in cash to the noteholders immediately before the bankruptcy filing when the debtor was contractually required only to pay in kind by the issuance of new notes.

44

realize the maximum recovery from the Debtors' assets. In contrast, Coram was a reorganization case where the creditors and shareholders disagreed over the enterprise value and, therefore, what recovery shareholders should receive.

The parties did, however, acknowledge that Gold was working as a consultant to TBF on two cases at the time he was hired by the Debtors. That relationship, together with the fact that Gold was being paid $30,000 per month by TBF (albeit on behalf of ADA), does create at a minimum a potential conflict of interest. Given Gold's extensive business relationship with TBF, his loyalty to the Debtors could be questioned.

### 2. Breach of Loyalty

Alber asserts that Gold's relationship with Traub (and failure to disclose that relationship) constituted a breach of Gold's duty of loyalty to the Debtors. Gold denies that he had any disqualifying conflict of interest which he was required to disclose.

Under Delaware law "[c]orporate officers and directors are not permitted to use their position of trust and confidence to further their private interests. . . . and stand in a fiduciary relation to the corporation and its stockholders." Guth v. Loft, Inc., 5 A.2d 503, 510 (Del. 1939). The duty of loyalty "requires an undivided and unselfish loyalty to the corporation [and]

45

demands that there shall be no conflict between duty and self-interest." Id.

In the instant case, there was a potential conflict between Gold's position as president and CEO of the Debtors and his business relationships with counsel for the Committee. "When faced with such divided loyalties, directors [and officers] have the burden of establishing the entire fairness of the transaction to survive careful scrutiny by the courts." Mills Acquisition Co. v. Macmillan, Inc., 559 A.2d 1261, 1280 (Del. 1989). The duty of loyalty is usually tested in cases where an officer or director has an interest in a party involved in a sale transaction with his company. In that context, courts focus on "fair dealing and fair price" in determining the entire fairness of the transaction. Id.

In this case, there was no transaction between the Debtors and ADA. Therefore, the Court need not determine if the dealings between the two were fair and for a fair price. Gold's position as a partner at ADA did not constitute a breach of his duty of loyalty to the Debtors under Delaware law. Nor is there any other evidence that Gold's other relationships with TBF and Traub caused him to violate his duty of loyalty to the Debtors. Consequently, the Court concludes that no breach has been established.

46

    3.   Section 327 and Bankruptcy Rule 2014

Alber asserts that, because of his conflict of interest, Gold also violated section 327 and Bankruptcy Rule 2014 by failing to disclose his relationships with TBF, Traub and ADA at the time he was hired by the Debtors.

Gold argues that he is not required to comply with section 327(a) or Bankruptcy Rule 2014 because he was hired as an employee of the Debtor and is not a professional as that term is used in section 327(a). See, e.g., In re All Seasons Indus., Inc., 121 B.R. 822, 825 (Bankr. N.D. Ind. 1990) (concluding that section 327(a) could not apply to officers, because it would result in wholesale removal of all pre-petition officers who are insiders and not disinterested); In re Phoenix Steel Corp., 110 B.R. 141, 142 (Bankr. D. Del. 1989) (holding that officers employed by debtor pre-petition could continue to be employed post-petition under section 327(b) without court approval); In re Midland Capital Corp., 82 B.R. 233, 239 n.10 (Bankr. S.D.N.Y. 1989) ("Executive officers are simply not 'professional persons'."). See generally, Collier on Bankruptcy § 327.02[6][c] (15th ed. rev.) (stating that the correct analysis is that executives of the debtor are not professionals whose employment is subject to approval under section 327(a)).

47

Alber asserts, however, that Gold should have known that his relationship with ADA and Traub was inappropriate and should be disclosed because of his experience in the Bonus Stores case. That case, however, is distinguishable.

In Bonus Stores, the Debtor sought to retain both TBF and ADA (not Gold) as professionals under section 327(a). The Court denied the ADA application and permitted retention of TBF as special counsel only. That denial was not predicated on the relationship among TBF, Traub, Gold and ADA.[10] Instead, it was because ADA and TBF had performed pre-petition services for the debtor's secured creditor in connection with the debtor. The Court found that their representation of a creditor in matters relating to the debtor was a direct conflict of interest precluding their retention by the debtor under section 327(a).

In this case, ADA was not retained by the Debtors; Gold was. In addition, there is no evidence in this case that Gold ever represented any creditor of the Debtors in dealings with the Debtors. Thus, the facts of this case are distinguishable from Bonus Stores.

There are courts, however, which have held that the retention and/or the compensation of the debtor's executives must

---

[10]  There could have been an issue of improper fee-sharing in that case had both ADA and TBF been retained. See 11 U.S.C. § 504(a). Because ADA was not retained, the issue was moot.

be approved by the bankruptcy court.  See, e.g., In re The Crouse
Group, Inc., 75 B.R. 553 (Bankr. E.D. Pa. 1987) (holding that,
although compensation of debtor's officers is subject to court
scrutiny, disqualification under section 327 is not automatic
because of lack of disinterestedness); In re Zerodec Mega Corp.,
39 B.R. 932, 935 (Bankr. E.D. Pa. 1984) (holding that employment
of officers and their compensation are subject to bankruptcy
court approval because "the statutory framework established by §§
327 and 328 provides an express treatment of the subject of
employment [of officers] with the requisite safeguards and
restrictions.") and cases cited therein.  See generally, 5
Collier on Bankruptcy § 1107.03 (15th ed. 1983) (stating that
section 1107 permits employment of officers under section 327(a)
even though they had been employed by the debtor pre-petition).

     Even the courts which hold that section 327(a) does not
apply conclude that they have authority to review the
compensation paid to officers for reasonableness.  See, e.g.,
Phoenix Steel, 110 B.R. at 142-43 (holding that compensation of
debtor's officers is subject to section 330 review by court);
Midland Capital, 82 B.R. at 238 (concluding that compensation of
officers is subject to review for reasonableness under section
503(b)(1)(A)).

The Court agrees with those courts that conclude that an officer is not a professional who needs to be retained by the debtor under section 327(a). Nonetheless, the Court does have the power to supervise and deny compensation to officers of a debtor in appropriate circumstances. The extent of relationships that might affect an officer's loyalty (and the failure to disclose those relationships) are factors that the Court should consider in supervising officers of the debtor. In order to properly exercise such a role, as well as to permit other parties in interest to evaluate the officer, the disclosure of relationships that an officer may have with creditors, professionals, and other parties in interest in the case is necessary. If officers do not have to disclose conflicts of interest, the Court would not be able to evaluate the reasonableness of the compensation being paid to the officer or prevent improper conduct. The facts of this case, as well as others, convince the Court that without a disclosure requirement much mischief can occur. Coram, 271 B.R. at 236.

In this case, Gold acknowledges that he failed to disclose to the Debtors, their counsel or any other party his relationship with TBF, Traub and ADA at the time he was hired by the Debtors. Unlike TBF and MNAT, as an officer of the Debtors Gold was not required at the time to disclose that relationship. In the

50

future, however, the failure of an officer of a debtor to disclose such relationships will subject that officer to review and possible disgorgement of compensation if the Court concludes that the relationship constitutes an actual conflict of interest.

In this case, the Court concludes, upon review of the relationships among Gold, TBF, Traub and ADA, that the evidence fails to establish any actual conflict of interest held by Gold that caused any harm to the estate. Therefore, the Court concludes that there is no basis to reduce Gold's compensation or otherwise sanction him under the general equitable concepts of the Bankruptcy Code.

### 4.   Perjury and Bankruptcy Crimes

Alber asserts that Gold committed perjury and other bankruptcy crimes. Among the other "crimes" Alber asserts Gold committed are obstruction of justice, bankruptcy fraud, concealment of assets, false oaths and claims, and bribery. Absolutely no evidence of any of these purported crimes was, however, adduced at trial.

The essence of Alber's allegations is that Gold failed to disclose his relationship with ADA, Traub, and TBF in his retention application and in the biography he submitted in connection with his retention as Plan Administrator. As noted above, no rule existed at that time requiring an officer of the

51

debtor to disclose any relationship in a case. Therefore, the failure to disclose cannot be considered perjury or any other bankruptcy crime. Consequently, the Court finds no reason to refer this matter to the U.S. Attorney.

### 5.   Waste of Estate Assets

Alber asserts that Gold wasted assets of the estate by preparing a form 10k which the Debtors never filed with the SEC. Gold testified that work was done on the 10k because the SEC denied the Debtors' request for exemption. Ultimately, however, the 10k was never filed because it was determined after consultation with counsel that the SEC filing requirements could be satisfied by filing the Debtors' monthly operating reports under an 8k rather than finishing the costly task of filing the 10k. Gold testified that the work on the 10k was used in other filings and was not a waste.

The Court does not fault Gold for having taken the precaution of doing preliminary work on the 10k until it could be clarified whether the filing would be required. Further, Gold was on salary so there was no additional expenditure by the estate for that work. Nor is there any suggestion that Gold failed to perform other necessary tasks because of it. In fact, Gold points to the efforts he has expended in this case which has resulted in a 16% recovery for general unsecured creditors, when

52

it was originally estimated that they would receive only 10%. Gold asserts that his efforts in maximizing value for creditors belies any suggestion that he was conflicted, failed to fulfill his fiduciary duties, or wasted assets of the estate. The Court agrees that Alber has failed to establish any basis for his allegation that estate assets have been wasted.

Alber does raise, in his post-trial submission,[11] that Gold has failed to adequately represent the interests of the estate by allowing the Debtors' corporate registration to lapse in May 2002. This was apparently occasioned by the resignation of the Debtors' agent, without notice to the Debtors.

Even if this occurred through negligence of the Debtors or Gold, however, the Court concludes that there has been no harm to the estate. The Debtors in this case are liquidating. Under Delaware law, a dissolved company "remains a viable entity authorized to possess property as well as sue and be sued incident to the winding up of its affairs." City Investing Co. Liquidating Trust v. Continental Cas. Co., 624 A.2d 1191, 1195 (Del. 1993). See also Del. Code Ann. tit. 8, § 278 (2004) (providing an automatic three year extension of corporate existence after dissolution, which may be extended for any

---

[11]  This is one example of pleadings filed by Alber alleging wrongdoing without presenting any evidence of it at the hearing. The Court has entered Orders striking similar submissions.

purpose relating to litigation and the winding up of its
affairs).  Consequently, even if the Debtors had been dissolved
under Delaware law they are authorized to continue to perform all
things necessary to finish liquidating the estate and paying
creditors.  Thus, there is no basis to conclude that Gold has not
performed appropriately in this case.

For the reasons stated above, the Court concludes that Gold
had a potential conflict of interest that should have been
disclosed at the time of his retention.  Because there is no
evidence that an actual conflict of interest arose or that any
harm occurred as a result of the potential conflict of interest,
the Court concludes that no reduction in Gold's compensation is
warranted.   The Court further does not find that Gold committed
any bankruptcy crime or wasted assets of the estate.  Therefore,
it will deny Alber's Motion as to Gold.

E.    Goldman Settlement

As noted above, the Committee has reached a settlement with
Goldman by which Goldman will remit an additional $200,000 to
settle the request for return of the success fee and expenses
paid pre-petition.  Alber objects to the settlement asserting (1)
that a member of the Committee had an actual conflict of interest
at the time the Goldman settlement was approved and (2) that the
estate has other claims against Goldman.

Despite Alber's allegations, the evidence presented at trial established that there was no conflict on interest.  Alber asserted that one of the members of the Committee (and later the PEDC), R.R. Donnelly & Sons Co. ("Donnelly"), had two Goldman directors on its board of directors at the time the Committee approved the Goldman settlement.  In fact, the affiliation was with GS Capital Partners, an entity which has no relationship or connection with Goldman.  Further, Donnelly was not even a member of the PEDC at the time the Goldman settlement was approved. Donnelly left the Committee, not because of any conflict, but because the individuals serving on the PEDC for Donnelly left its employ.

Further, the Settlement with Goldman does not contain a general release.  Therefore, approval of it will have no adverse effect on the action brought by the PEDC against Goldman and others for damages resulting from the failed IPO.

There being no other objections and the Court being convinced that the Goldman settlement is in the best interest of the estate, it will approve the Goldman settlement.


IV.  CONCLUSION

For the reasons stated above, the Court will grant, in part, Alber's Motion to disqualify and for disgorgement of fees from

55

MNAT and require the repayment of all fees earned for services rendered in connection with the Goldman and GECC matters.  The Court will grant the UST's Motion for approval of the Settlement with TBF and will deny Alber's Motion for sanctions against TBF to the extent it seeks any further relief from TBF.  The Court will deny Alber's motion for sanctions and other relief against Gold.  Finally, the Court will approve the Goldman settlement.

An appropriate Order is attached.

BY THE COURT:

Dated: October 4, 2005

Mary F. Walrath
United States Bankruptcy Judge

56

# EXHIBIT "B"

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | **Chapter 11** |
| | ) | |
| ETOYS, INC., et al., | ) | **Case No. 01-0706 (MFW)** |
| | ) | |
| Debtors. | ) | Related To Docket No._____ |

### ORDER GRANTING EXPEDITED CONSIDERATION OF BARRY GOLD'S MOTION TO STRIKE THE IMPROPER AND UNAUTHORIZED POST-HEARING PLEADINGS FILED BY STEVE HAAS A/K/A LASER HAAS, PURPORTEDLY ON BEHALF OF COLLATERAL LOGISTICS, INC.

THE COURT having considered Barry Gold's Motion for expedited consideration (the "Motion") of his Motion to strike (the "Motion to Strike") the improper and unauthorized post-hearing pleadings filed by Steve Haas a/k/a Laser Haas, purportedly on behalf of Collateral Logistics, Inc. (Docket Nos. 2291 – 2293), and any response thereto, and notice of the Motion having been appropriate under the circumstances, and good cause having been shown, IT IS HEREBY ORDERED:

1.    The Motion ~~is~~ Granted. *to Expedite*

2.    The ~~Court will rule upon the~~ Motion to Strike ~~without further notice or a hearing.~~ *is GRANTED because the pleadings purport to be filed by a corporation without counsel. A corporation may not appear on file pleading in federal court without counsel. Rowland v. Cal. Men's Colony, 506 U.S. 194, 201-02 (1993). Docket Nos. 2291, 2292 & 2293 SHALL BE STRICKEN.*

_____
Mary F. Walrath
United States Bankruptcy Judge

Dated: _____June 27___, 2005

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:

ETOYS, INC., et al.

Confirmed Debtors.

IN PROCEEDINGS UNDER CHAPTER 11

CASE NOS. 01-0706 through 01-0709

JUDGE RANDOLPH BAXTER

ORDER

The matter before the Court is a pleading filed by Steven Haas which is captioned "Emergency Motion by Collateral Logistics, Inc. (CLI) For Summary Adjudication on Omni Statement on Haas Affidavit of November 2001 Specifically Ruling that the Haas Affidavit is Not a Waiver with Prejudice" (the "Emergency Motion"), and the Motion to Strike said Emergency Motion filed by the Post Effective Date Committee (the "PEDC"). After considering the pleadings, it is hereby:

ORDERED that, under applicable law, CLI cannot appear *pro se* in this matter (*See National Indep. Theatre Exhibitors v. Buena Vista Distrib.* 748 F.2d 602, 609 (11th Cir. 1984); *In re Tamojira, Inc.* 20 Fed. Appx. 133 (4th Cir. 2001); *Jones v. Niagara Frontier Transp. Authority*, 722 F.2d 20 (2d Cir. 1983)), and is specifically prohibited from causing any future filings to be made on the docket in this matter without the benefit of counsel; it is further

ORDERED that Steven Haas is not a licensed attorney and is prohibited from representing or causing any future filings in this matter on behalf of CLI; it is further

ORDERED that any future filings by CLI *pro se* or Haas on behalf of CLI, shall result in the imposition of sanctions; it is further

ORDERED that the above-referenced Motion to Strike is hereby granted as to the subject Emergency Motion and the request to limit notice and shorten time. Accordingly, the Clerk of Courts shall take all steps necessary to permanently delete from the Court's docket the Motion for Summary Adjudication [Docket No. 2284] and Motion to Limit Notice [Docket No. 2285]

filed by Steven Haas on behalf of CLI.

IT IS SO ORDERED.

Dated this _25th_ day of
July ~~June,~~ 2005

RANDOLPH BAXTER
UNITED STATES BANKRUPTCY JUDGE

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                                                    )
                                                          )
ETOYS, INC., et al.,                                      )
                                                          )
                           Debtor.                        )
                                                          )
_____                   )
                                                          )
STEVEN HAAS,                                              )
                                                          )
                           Appellant,                     )
                                                          )          Civil Action No. 05-728-KAJ
              v.                                          )
                                                          )
ETOYS, INC. AND POST-EFFECTIVE                            )
DATE COMMITTEE OF UNSECURED                               )
CREDITORS,                                                )
                                                          )
                           Appellee.                      )

## ORDER

At Wilmington this 14th day of November, 2005,

For the reasons set forth by the court during the telephonic oral argument,

IT IS HEREBY ORDERED that appellee's motion to dismiss the appeal

(D.I. 5) is GRANTED.

_____
UNITED STATES DISTRICT JUDGE