# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------X
In re:                                         :
                                               :
                                               :    Chapter 11
                                               :    Bankruptcy
ETOYS, INC., et al,                            :    Case Nos. 01-0706
                                               :    Through  01-0709
                                               :    Jointly Administered
            Confirmed Debtors                  :
-------------------------------------------------------X
                                               :
STEVEN HAAS, et al                             :
                                               :
            Appellant,                         :
                                               :
         v.                                    :    Civil Action No. 05-829
                                               :
ETOYS, INC. AND POST-EFFECTIVE DATE            :
COMMITTEE OF UNSECURED CREDITORS,              :
TRAUB BONACQUIST & FOX, MORRIS                 :
NICHOLS ARSHT & TUNNEL,                        :
BARRY GOLD, FREDRICK ROSNER                    :
                                               :
            Appellees                          :
```



RECEIVED MAR 10 2006 U.S. DISTRICT COURT DISTRICT OF DELAWARE

**OBJECTION TO MOTIONS TO DISMISS AND MOTIONS TO STRIKE STEVE HAAS PRO SE AND/OR COLLATERAL LOGISTICS WHICH ARE THE MOTIONS OF TRAUB BONACQUIST & FOX, BARRY GOLD AND MORRIS NICHOLS ARSHT & TUNNEL BASED UPON ORIGINAL/ADDITIONAL FACTS DISCOVERED**

Appellant who is Steven Haas, (the "APPELLANT") (a/k/a Laser Haas) who is also the 100% owner of Collateral Logistics, Inc. (CLI) comes this day January 12, 2006 before this Court with the original facts of Fraud/non disclosure while additionally, newly discovered facts that demonstrate the continuous intent of Morris Nichols Arsht & Tunnel ("MNAT") that is counsel for the bankrupt estate of eToys 01-706 (the "DEBTOR"),

along with Barry Gold who is the "wind down coordinator", then following as CEO, President of the DEBTOR while also being the confirmed in November 2002 as the Plan Administrator of the Post Effective Date Committee (the "PEDC") of the DEBTOR, along Traub Bonacquist & Fox ("TBF") which is the Court approved counsel for the Official Creditors Committee, along with Fredrick Rosner who is the self described "local counsel for TBF", whereby TBF, Barry Gold, MNAT and Fredrick Rosner are hereafter, when mentioned as a collective manner, referred to as MOVANTS (the "MOVANTS"). For this APPELLANT discovered the existence of Asset Disposition Advisors LLC ("ADA") and entity formed in April 2001 by Barry Gold and Paul Traub, which they have subsequently admitted to after the irrefutable documents were placed in evidence by this APPELLANT. The Court Ordered 'come clean" responses to the allegations on January 25, 2005. Which was the first time APPELLANT and relevant parties of interest affected by the subterfuge were allowed to see the Barry Gold hiring letter. Since the OPINION and resulting ORDER of October 4, 2005 APPELLANT does state the newly discovered and documented facts as true to the best of APPELLANTS knowledge and belief for this Courts review has come to light of additional non disclosures, that this APPELLANTS issues and records concerning such additional non disclosures are germane to the case, that this APPELLANT is certified to have standing per the doctrine of "aggrieved person", per Fed Rule of Civ Proc 23.1, 24 and 25, along with multiple standings under Bankruptcy Code 503(b), combined with the details of additional undisclosed Facts by the MOVANTS wherefore APPELLANT prays the Court dismiss, with prejudice the MOVANTS motions, per the following:

## Preliminary JUDICIAL FACTS

I.  APPELLANT prays the Court take, under Fed Rule of Evidence 201 Judicial Notice of the following.

A.  Paul Traub of TBF and Barry Gold have admitted to failure to disclose their conflict of interest.

B.  Her Honor Mary F Walrath did hand down the OPINION of October 4, 2005 which addressed the issue(s) in detail.

C.  That Barry Gold, by his, Paul Traubs and the hiring letter which is dated June of 2001, (after the fact) that Barry Gold was engaged as a "Post Petition" person of the DEBTOR.

D.  That the CODE 327(a) is "unambiguous" and that such has been reconfirmed many times by the 3rd Circuit. Judge Farnan formerly Chief of the Delaware Bankruptcy Court and now of the 3rd Circuit did establish the "quantitative" and "qualitative" guidelines for who must apply.

E.  As the Barry Gold hiring letter was drafted by Barry Gold, Dave Gatto, MNAT and TBF such is a "conspired" endeavor to circumvent the Rules and Codes of **101(14), 2014, 327(a)**.

F.  That Her Honor Walrath stated in the OPINION of October 4, 2005 to *"do otherwise would only serve to punish [plaintiff] {APPELLANT} and reward conflicted attorney's"* To apply Fed Rule of Civ Proc 60(b)(6).

## BACKGROUND

1.  The DEBTOR filed a bankruptcy petition on, or about, March 7, 2001.

2.  Barry Gold and Paul Traub have testified that Barry Gold became, "post petition" the "wind down coordinator" in May 2001, then becoming, subsequently CEO and President after D&O insurance that was previously cancelled by the Court was reinstated to protect Barry Gold. The fact that Barry Gold came on the DEBTOR "post petition" is confirmed on multiple occasions by Barry Gold/Paul Traub response(s) on January 25, 2005, deposition of February 9, 2005 and their on the stand testimony which is in the Transcript of the March 1, 2005 hearing that is already a part of the Court record. Along with the very OPINION by Her Honor Walrath, with the resulting Order thereof on October 4, 2005 that is the basic framework for APPELLANTS appeal.

3.  TBF was the Court approved counsel for the Official Creditors Committee on or about April 2001 "nunc pro tunc". TBF is a New York City self described "boutique firm", vastly experienced bankruptcy attorney firm from cases as early as TSS in the late 1980's, while in the 1990's Wisconsin Toy, NeoStar, Luria, Witmark, Jumbo Sports and many more.

4.  Fredrick Rosner is a Delaware Attorney that has been with several firms in Wilmington DE during the tenure of the DEBTOR'S case and is currently with the firm of Jaspen Schlesinger. Mr. Rosner is the self proclaimed TBF "local" counsel.

5.  MNAT is the Court approved counsel for the DEBTOR.

6.  APPELLANT is the owner of CLI which was the Court approved liquidator of the DEBTOR that was hired by the Creditors Committee, whose contracts

that were approved by the Court were drafted by TBF, MNAT, Mr. Rosner with input and direction by the Creditors Committee and Barry Gold.

7. The Court, per Her Honor Walrath did hand down an Opinion on October 4, 2005 (the "OPINION") that stated, "Incorrectly" and with serious "Egregious" results that Barry Gold did not have to apply as a "**pre petition**" officer of the DEBTOR and that MNAT, along with TBF had been found guilty of willful non disclosure and had to disgorge amounts determined therein the OPINION, with the "settlement" Order on October 4, 2005. Which has caused this APPELLANT to appeal said OPINION and resulting ORDER as too lenient per the established principals, doctrines and statues concerning non disclosure per **327(a), 2014, 101(14)** and other relative statues.

8. The decision in the OPINION that no firm was disqualified as per Code **327 (a)** along with the incorrect decision of the OPINION misstating improperly that Barry Gold did not have to apply per **327(a)**, as the OPINION stated incorrectly that Barry Gold was not required as a "pre petition" employee of the DEBTOR A statement that remains disputed by APPELLANT and a shareholder of record, Robert Alber ("SHOR") along with the Former Chairman of the Creditors Committee. For all the testimony by Barry Gold and TBF state in their Responses of January 25, 2005 and the Hearings of February 1, 2005, March 1, 2005, the depositions of February 9, 2005 repeatedly state that Barry Gold was hired as "wind down coordinator" on May 21, 2005 by the DEBTOR and the hiring letter is signed by David Gatto a VP of the DEBTOR in June 2001. While we take dispute with the contention that Barry Gold would be off the hook if he had been a "pre petition" employee of the DEBTOR, the fact remains that Barry Gold by his and Paul Traub's testimony repeatedly states that Barry Gold was a

"**Post Petition**" employee of the DEBTOR. APPELLANT does hereby also state, that had Barry Gold been a prepetition employee the fact would remain that TBF would have to be disqualified.

### ADDITIONAL FACTS THAT ARE EVIDENCE OF CONTINUED NONCOMPLIANCE

9. Mr. Gold through his counsel did respond per Her Honor Walrath's instructions on January 25, 2005. ("GOLD RESPONSE").

10. Within that document Mr. Gold, through his counsel Mark Minuti of Saul Ewing Firm (Saul Ewing has worked with Paul Traub in previous cases) where Mr. Gold did state in the GOLD RESPONSE in item 21 thereof the exact following wording:

a. " Prior to Mr. Gold's participation in ADA, he was not familiar with the process for the court approval of professionals under Bankruptcy Code Section 327(a) and Bankruptcy Rule 2014 and he had never participated in such process.

11. This statement of *"never participated"* is subterfuge on the part of Barry Gold, along with the statement by both Barry Gold and Paul Traub state they knew little of each other prior to 2000. The germane, statue issue is how much they knew of each other prior to March 7, 2001, the filing petition date of DEBTOR. They also say that their co-owned entity Asset Disposition Advisors LLC ("ADA") did not receive money from eToys. This is subterfuge also as the relevant fact is that Barry Gold received money from TBF. They have testified repeatedly to this irrefutable Fact! A fact that it was

detailed as 4 separate payments of $30,000.00 each from January to May 2001, stopping the moment that TBF placed Barry Gold in as "wind down coordinator" of the DEBTOR in willful, intentional, subterfuge, violating **18 USC 155 Fee Fixing**, while intentionally, willfully failing to inform parties of interest and the Court, along with this APPELLANTS testimony and the Affidavit of the Chairman of the Creditors Committee stating that all were deceived by Paul Traub and Barry Gold, where the Code of **327(a)** mandates disqualification, total disgorgement and submittal, officially, of the facts to the US Attorney's office per the **U S Judicial Canon of Conduct 3(B)3**, along with **18 USC § 3057(a)**. They have lined their pockets with extensive fees under false, perjured statments. Their hands are "unclean" in clear violation of **327(a)** and **18 USC § 155 Fee Fixing, 18 USC § 1001 False Statements, 18 USC § 152(2) False Oath/Declarations, 18 USC § 157 Bankruptcy Fraud and 18 USC § 4 MisPrison.**

12.     They endeavor to pervert justice by their previous subterfuge which has had success in other cases, where the parties were not aware of TBF history with Barry Gold in stating that Barry Gold has not previously applied to be hired per **327(a)** the fact is Barry Gold has repeatedly gained employment in a "to be" Debtor where he subsequently applies, <u>sometimes</u>, as an employee hiring contract, while most times not revealing his ties to TBF. The fact that Barry Gold has not previously applied <u>properly</u> by the required Code of **327(a)** being successful in side stepping the statues, cannot set a precedent that it is a standard that Barry Gold and TBF can "ad hoc" choose whether or not CODE **327, 101(14)** or RULE **2014** apply. They seek to do an apple to orange comparison of what is germane to this case. The willful, intentional drafting of the Barry Gold hiring letter by MNAT, TBF, Barry Gold, Mr. Rosner to permit Barry Gold to

choose, of his own volition, as a contractual right, to side step application to the Court and never revealing such to APPELLANT or the Creditors Committee Chairman Lee Castillo is concrete proof of Fraud perpetrated upon the Court, Fraud perpetrated upon parties of interest such as APPELLANT or the shareholders, Intentionally! Which is clear cut violation of **327(a), 101(14), 2014, 2016, 330** and **28 USC 155**. Combined together, with the multiple party participation (MNAT, TBF, Fredrick Rosner, Barry Gold, David Gatto, Richard Cartoon, Xroads and maybe Irell & Manella) in the Barry Gold/Paul Traub subterfuge that has billed the DEBTOR'S Estate over $14 million in Fee's is a major scheme of a significant conspiracy and proof of Conspiracy to Defraud! For that relationship has certainly harmed this APPELLANT who, as a fiduciary duty, pulled Barry Gold aside and forewarned Barry Gold to be careful of Paul Traub. The irony of such should place great aghast to all parties of interest. APPELLANT did what was proper to protect the assets of the ESTATE and as a result placed myself in harm's way.

13. As previously stated, the eToys case was filed in March of 2001. So the issue is that simple. Did Paul Traub, his firm TBF and Barry Gold have any relationship/knowledge of each other prior to March 7, 2001. If so they had to disclose, this is why Paul Traub and Barry Gold continually exhibit their willful intention to pervert the truth to their own benefit when they state they knew little of each other before the year 2000, saying such as though it excuses or minimizes their association as it pertains to the DEBTOR. APPELLANT states that the MOVANTS are professional, pathological, purveyors of falsehood. Doing such professional dances around the Facts in an artful manner does not dilute the illegality of their violations of the Code/Rule of LAW. Sufficient deterrent has not occurred as immediately after admitting the non

disclosure and agreeing to pay a disgorgement of $750,000 TBF requested in the Estate of KB Toys 04-10120 immediately after the hearings of March 1, 2005 where TBF petitioned the Court to be the firm that prosecutes the $100 million preferential of Michael Glazer. Failing to mention in that $750,000 disgorgement settlement, based upon a come clean principal through entire disclosure, they fail, miserably in informing the Court and parties that Barry Gold and Paul Traub have worked with Jack Bush of IdeaForest/Bain repeatedly as they did just prior to this DEBTORS case in Stage Stores, which included Michael Glazer (who is also the long standing CEO of KB Toys) in Stage Stores Inc TX S Dist Bankr 00-35080. The significance thereof is that this DEBTOR sold substantial portions of the assets of the Estate to KB Toys/BAIN and the sales prices this APPELLANT originally established were greatly diminished in negotiations by TBF and Barry Gold. The significance in KB Toys case is that TBF did not disclose their relationship to the Debtor of KB and their principals demonstrating, repeatedly that TBF and Barry Gold feel that the CODE does NOT apply to them.

14. The answer by the CODE and RULE of Law per **327(a), 101(14), 2014 & 2016** is <u>yes, they knew each other</u>, <u>yes, they were undisclosed</u>, <u>yes the non disclosures was willful</u>, <u>yes the non disclosures was intentional</u>, <u>yes the relationship(s) are harmful</u> to the DEBTOR, this APPELLANT and other parties of interest. The violations are irrefutable by both the testimony on the stand and the responses of Michael Fox, Barry Gold, MNAT and Paul Traub. They have testified that they disclosed in every other case but eToys. Their excuse is that they felt they did not have to do so in eToys. Michael Fox and Paul Traub even testified, in their written responses, that they discussed the non disclosure after ADA came to public light <u>In re Bonus Stores DE Dist 03-12884</u>, in 2003

and that they made the conscious decision to remain continuously silent about the non disclosure as the PLAN of this DEBTOR was already confirmed. Such repetitive, willful "ad hoc" decisions not to comply with the CODE not only violates many statues of the Bankruptcy CODE they are also clear, definitive violations of the Professional Rules of Conduct per the ABA Canon's. Their justification is that all the vastly, extensively experienced Attorneys who are all professionals in many/large bankruptcy matters, such as MNAT, TBF, Irell & Manella, Mr. Rosner, along with Barry Gold, collectively decided not to disclose, stating only to themselves that such was not necessary and in collective participation of the Barry Gold hiring letter (where the relative portion thereof is hereafter referred to as ("EXHIBIT 1")) where the MOVANTS stated that **327(a)** as pertains to Barry Gold did not apply in this case. Stating that a "post petition", "non disinterested" "wind down coordinator" that was to be the "**sole**" decision making authority of the DEBTOR was not required to apply in accordance to the most simple, fundamental Rule/Code(s) of Bankruptcy LAW. It is as if the MOVANTS were on another Planet where the CODE does not exists. It is an "ad hoc" decision that only benefits those that did not disclose, specifically the MOVANTS, at the direct harm & expense of the parties of interest, including the DEBTOR, this APPELLANT, the SHOR, where the MOVANTS "intentionally" drafted the hiring letter that allowed Barry Gold to "willfully" choose, of his own volition, as a written contractual right, whether or not to apply to the Court, which has resulted to date whereupon they have benefited to over $14 million in fee's. For the hammer of justice not to be swift, authoritative and distinct here would pervert, as a precedent, the entire "*sine qua non*" of the Code which is entirely based upon the ethics of disclosure and a diametrically opposed Creditor v Debtor.

15. Both this APPELLANT and the former Chairman of the Creditors Committee have testified repeatedly that Barry Gold and Paul Traub did deceive the parties that had the right to object to such relationship. Please see the Affidavit of the Former Chairman which is hereafter referred to as ("EXHIBIT 2 "). As APPELLANTS statement is corroborated by such a key figure that has no benefit to himself personally in stating such, where the former Chairman actually had to review the fact, the possibility, that the MOVANTS might engage in acts of retribution against him as he has witnessed APPELLANTS suffering. He should be commended for his testimony, for he is here, at great risk to himself, he places his AFFIDAVIT in the record so that Justice can occur. He has had over 15 years experience with TBF and he has had experience in hundreds of bankruptcy cases as credit Director of Mattel for 22 years being a Chairperson or committee person many times.

16. Paul Traub and Barry Gold have both confessed that TBF paid Barry Gold 4 payments of $30,000 each from January 2001 to May 2001. This is within the Transcript of the March 1, 2005, along with the Responses in the record of January 25, 2005 and the depositions of February 9, 2005. Where, during the hearing, <u>Her Honor Walrath deposed Paul Traub on the details of the payments in exactness</u>. The facts thereof are also restated in Her Honors' OPINION.

17. Additionally, the statement by MOVANTS that ADA did not receive monies from DEBTOR has no diminishing weight upon the fact that the ownership of ADA was the "hidden" "proof positive" that Paul Traub and Barry Gold had a relationship. If, indeed, ADA had received monies from the DEBTOR, such would have been additional egregiousness. However, the <u>suggestion</u> (all statements by the repetitive

non disclosing parties must now be viewed with great amounts of skepticism until verified) that ADA did not receive monies <u>does not</u> diminish the fact of the violations of non disclosure and conflicts that the existence of ADA ownership proves—which is that Barry Gold and Paul Traub had a relationship **post petition** of DEBTOR, that was not disclosed until this APPELLANT refused their bribery and their threats, such threats are in violation of **18 USC § 1512 Tampering with Victim or Witness** (APPELLANT is both) where MOVANTS warned APPELLANT to "back off" or not only would APPELLANT remain unpaid, but they (the perpetrators) would come after APPELLANT for the monies already paid to APPELLANTS entity for services previously performed..

18.   Throughout Mr. Gold's autobiography comments he has mentioned cases that he and Paul Traub have worked together upon such as <u>In re HomeLife De Dist 01-2412</u>, <u>In re ZB Company De Dist 03-13672</u>, <u>In re KB Toys De Dist 04-10120</u>, <u>In re Bonus Stores DE Dist 03-12884</u>, as well as cases with TBF and Jack Bush of such as the cases of Office Max, Pharxmor, Drug Emporium, etc.. which are all cases that appear to be post eToys filing.

19.   There are cases they have also mentioned, while continuing to be less than fully truthful. Which are pre petition to the filing of eToys such as <u>Stage Stores Texas S Dist Bankr. 00-35080</u>, along with <u>Witmark Inc</u>. where TBF was working "in and out of Court" workouts with the debtor where Barry Gold was a "restructuring officer" of the Debtor (implying that Witmark is where Barry Gold first met TBF) which is in 1997. Which is not correct? Also the case they worked together in <u>Jumbo Sports</u> a Florida bankruptcy also entitled <u>Sports & Recreation, Inc.</u> in 1998 and 1999. Where again TBF was a creditors counsel and Barry Gold was engaged as "restructuring services officer"

where we have both Paul Traub's testimony and Barry Gold that Jack Bush is a director of Stage Stores and was a Director of Jumbo Sports. ( Stage Store's is also known as Specialty Retailers and is Co-Debtor with Liquidity Solutions –Jack Bush of Stage, Jumbo and IdeaForest works extensively with BAIN as IdeaForest is a BAIN held entity. BAIN is also the owner of KB Toys).

20. Barry Gold testified here after the Responses of January 25, 2005, that Jack Bush obtains him many jobs. This has all come to more detailed light by the existence of Paul Traub's Supplemental Affidavit in Stage Stores, which occurred after a creditor therein, had discovered the undisclosed conflicts. As that creditor had more apparent weight than we have as "Pro Se" there were extensive details in Stage Stores including the hiring letter request by TBF to Stage that was written directly to Barry Gold, stating <u>Dear Barry</u>: as if they did not know him prior to Stage. Where again TBF was special counsel for the Estate and Barry Gold was a "restructuring/Executive officer" of the Debtor. Both TBF and Barry Gold spoke about Luria in 1997 where once again TBF was court approved counsel and Barry Gold was "restructuring officer" of the Debtor. This proof is provided by TBF and contains the greater detailed affidavit of Paul Traub in Stage Stores as a supplemental Affidavit which ends with the following exact statement by Paul Traub

    a. *Upon [TBF's] information and belief, Mr. Gold played no role in the creditors' committee's selection and engagement of TB&F as its [Stage Stores special engagement] counsel.*

21. Such statement is exactly what it appears to be, that the relationship knowledge of TBF and Barry Gold is irrefutable, yet in that case (Stage Stores), which was prior to this DEBTOR Paul Traub goes out of his way to state that Barry Gold had no influence upon TBF acquiring their job. Stage is directly connected to BAIN/KB Toys which acquired extensive assets of this eToys DEBTOR through TBF and Barry Gold final negotiations. The fact remains, irregardless is that TBF is consistently there in the same cases, across the country and in different Court Divisions and Barry Gold is consistently at the same cases, across the country in multiple districts. Where Barry Gold is consistently elusive in not applying by **327(a)** as a professional, which he should be doing but utilizing the TSS case by slipping around the statue as "a restructuring agent" of the entity (usually within the Debtor) his applications are made as an OCP or <u>pre petition</u> employee of those respective Debtors, while failing in revealing his previous connections to TBF. APPELLANT takes this time to state what has now become apparent and obvious, that TBF and Barry Gold in offering the proofs that they never before had Barry Gold apply as a "post petition professional" while being somewhat correct, draws a different conclusion than one they would infer. Barry Gold, all along should have been applying by **2014, 327(a)** and **101(14)**, the fact that they have been successful in such subterfuge in the past does not justify using such as a <u>precedent value</u> here. Furthermore it brings concrete proof, by their own documented Court document(s), irrefutable history, where they have engaged in specious subterfuge over many years, in many cases, in many states, giving solid basic, especially concerning eToys, KB Toys and Stage Stores the framework for a Racketeering indictment.

22. While the pattern of Barry Gold not applying on **327(a)** is established in those prior cases, it has no diminishing weight to the fact that Barry Gold was required to apply here as Barry Gold is a "**post petition**" employee of the Debtor, even though the OPINION of Her Honor misstates that Barry Gold was not required as a "pre petition" employee, the fact remains Barry Gold was a "**Post Petition**" "Professional" which is documented by proof positive in the January 25, 2005 Response of Barry Gold that gives us EXHIBIT 1, showing willful, intentional, conspired (for at a minimum TBF, Barry Gold, David Gatto and MNAT had to draft the letter) circumvention of Rule **2014, 327(a)** and **101(14)**.

23. Furthermore, what can be established is that in Luria, Jumbo Sports and TSS Seadmans Barry Gold did apply as an employee contract for Court approval, slipping around the regular application requirements as if he were a long term employee as he was in TSS Seadmans. It is obvious, plausible conclusion that "hey it works, we won't stop until we have to"! With further new evidence of intent to conceal facts, neither Barry Gold or Paul Traub have revealed to the Court, basically keeping such hidden that Barry Gold worked for TSS for 24 years as CFO. TBF remaining silent about their participation in that case also which was in the late 1980's and early 1990's. That Barry Gold had to apply in that case, what appears to be his very first case, even though he had been an employee for 24 years as CFO of TSS Seadmans. Wherefore Barry Gold has failed, by his own testimony, to apply here in the eToys case only. It is an extremely reasonable assumption such failure of Barry Gold to apply, is because of the fact that it would warrant a disclosure by TBF and Barry Gold about their relationship, immediately disqualifying, if not one, maybe both parties. That the total reason for the Barry Gold