hiring letter which was NOT revealed until the subterfuge was discovered by this APPELLANT, was to protect the conspirators in their ruse while giving Barry Gold a "get out of jail free card" assisting him in not committing perjury. Even the US Trustee, in the initial Motion of February 15, 2005, remarked that it is difficult to believe that the "non disclosure" was inadvertent, rather than deliberate. For the US Trustee went on further to state, in that original Motion to disgorge where the <u>US Trustee stated that he had warned everyone replacement of key officers of the DEBTOR had to be arms length</u>. We have additional evidence that there was extensive discussions about this with the documents that are part of the record from Xroads, which is DEBTOR case docket item 467 the Xroads billing fee application to the Court. Specifically stating that Xroads tried to provide a Xroads candidate, one Ian Hunter, while further stating in docket item 476 that phone calls occurred with the US Trustee office specifically upon the issue of key personnel, including one phone call that was billed of discussions with TBF & Xroads, along with a Xroads detailed statement that they were waiting on the "<u>court approval of the hiring of Barry Gold</u>"! Proving conclusively that the hiring letter endeavor that permitted, as a contractual option, that Barry Gold could chose whether or not, by his own volition, whether or not to apply is an obvious endeavor to assist the cover up and prevent Barry Gold from having to perjure himself at the outset. It remains specious to this day how Xroads was waiting for the Court approval of the hiring of Barry Gold, yet has remained silent on this issue, implying that they may also be part of the collaborative conspiracy. It is irrefutable, when the Code is adhered to that Barry Gold was mandated to be required to apply and disclose. It is set forth in many cases, including His Honor Farnan of the Delaware Court <u>In re: First Merchants 97-1500 (1997)</u> and <u>In re: First</u>

Jersey Securities 180 F 2d. 504 (3rd Cir 1999) which has long since established both the "quantitative" and "qualitative" rules on who must apply. Many cases such as In re: Cold Metal E Dist Hio 02-43679 which defines as did His Honor Farnan that a "professional" is one who's duties which centrally impact the Estate, Which is documented by In re Marion Carefree Ltd. 171 B R Ohio, In re Color Press 129 B R 143 145 S D Ohio, as with determination of the degree of Autonomy In re Riker Industries 122 B R 964 976 W Ohio, Stahl V Bartley Lindsay 137 B R D Minn 1989, In re Marvel Ent Group 140 F 3d 463 (3rd Cir 1998) In re: Pierce 809 F 2d. 1356 (8th circ 1986) which states that a court cannot use equitable principals to disregard *unambiguous statutory language*, where such has been repetitively affirmed in the 3rd Circuit along with many other relevant decisions along such lines as In re Marvel Ent 140 F 3d 463 (3rd Cir 1998). The Case of In re Bucyrus 94-20786 E D Wisc and the Gellene Milbank & Tweed matter. Along with the case of In re Martin 817 F 2d 175 180 (1st Cir1987) addressing both the "unclean hands" doctrine and listing the 12 factors to consider in application of who must apply and disclose by **327(a)**. As In re Seatrain Lines Inc. 13 B R 980 (S D N Y 1982). The OPINION of Oct 4, 2005 makes many an egregious error that is detrimental to many parties of interest while endeavoring, apparently to conclude the matter swiftly as it has to be aggravating to said Court that professionals they have had before them hundreds, maybe even thousands of times is engaged in such matters. Whereby the incorrect statements seem to vindicate Barry Gold, stating incorrect of the Facts in this case, that Barry Gold did not have to apply as a "pre petition" officer of the DEBTOR. Also the OPINION of October 4, 2005 violates all decisions by the Upper 3rd Circuit Court which has stated, repeatedly, that violations of **327(a)** have only one, unambiguous, conclusion

–that is "Disqualification" and that such cannot be diminished due to economic or any other reason. All testimony of record documents that Barry Gold is "post petition" "wind down coordinator" on May 21, 2001 which is 60 days after DEBTOR petitioned for bankruptcy protection on March 7, 2001. EXHIBIT 1, along with the transcript of the March 1, 2005 hearing testify to these facts explicitly. Also that letter was drafted and signed in an after the fact manner, exhibiting that there was much deliberation concerning such.

24. As Paul Traub was aware of the impending, unexpected, early retirement of the Chairman of the Creditors Committee, all they had to do, in order to be successful in their subterfuge, was keep the relationship quiet until the Chairman was gone, dismiss APPELLANT (appellants company CLI) and then the MOVANTS could bilk the Estate of the DEBTOR "ad hoc". The PLAN was drafted, as detailed below, in "bad faith" and the clause that permits the PLAN Administrator to settle items under $1 million without Court approval combined with the Fact that Stage Stores was owned by BAIN which owned KB Toys, along with the additional, undisclosed fact that Stage Stores is co-debtor with Liquidity Solutions, while Liquidity Solutions acquired millions of dollars in claims in this DEBTORS case is grounds for calling in the Marshal to seize the books and records. For every time they denied or refused that this APPELLANT or the SHOR could review the books/ records it is an endeavor to further the protection of their subterfuge.

25. What both Barry Gold and Paul Traub fail to mention is that BAIN had ownership of Stage Stores, which Stage Stores is Co-Debtor with Liquidity Solutions. That Barry Gold and Paul Traub worked for Stage/BAIN/Liquidity Solutions. That

BAIN also owns KB Toys, that the DEBTOR eToys through TBF, Barry Gold negotiated the finality of the sale of the largest portions of the DEBTOR assets to BAIN/KB Toys. This APPELLANT originally had $10 million for the eToys intellectual property to KB/BAIN, as the DEBTOR had sold BabyCenter.com to Johnson & Johnson pre petition for $10 million. The many hundreds of millions in advertising by the DEBTOR were spent primarily in the promotion, net worth of the eToys name. That Michael Glazer was a Director and Stock Holder at Stage Stores and that Michael Glazer is CEO of KB Toys for a long period of time. Every discussion of assets sales by TBF & Barry Gold with those entities is an egregious violation of collusion! Mysteriously the price of the eToys name kept going down. It was halted at the $3 million level because this APPELLANT had gained "inside" information and convinced the Chairman of the Committee to allow this APPELLANT to "bluff" TBF.

26.     It is also well hidden and undisclosed that Stage Stores is Co-Debtor with Liquidity Solutions. Liquidity Solutions has acquired extensive amount of claims in the DEBTOR'S Estate. The confirmed PLAN of eToys which is entitled the Post Effective Date Committee (the "PEDC") was drafted in Bad Faith. Barry Gold committed perjury when he signed the PLAN Declaration, stating "<u>under penalty of perjury</u>" that the PLAN was negotiated in "good faith" "arms length" negotiations between DEBTOR and Creditors. This is between Barry Gold and TBF, where no "arms length" could ever be. Even more egregious is the fact that Barry Gold was offered as PLAN Administrator by TBF, subterfuge in egregious violations of **Bankruptcy Rule 1124 to 1129**, while their main, purported, defense to such violations is the use of the "draconian" **Rule 1144**, that a PLAN cannot be amended "even for Fraud" after 180 days. Stating, in essence, that

their subterfuge, non disclosure and Fraud have a statue of limitations as part of the PLAN and **Rule 1144** as if both issues of their Fraud/non disclosure and the PLAN, were one and the same. While in the realm of TBF/Barry Gold that may be the case, that they ego manically state it is "their Plan" it is in fact the parties of interest Plan.

27.     The fact is the PLAN, along with the PEDC was formed in November 2002 after the SHOR (share holder of record Robert Alber) questioned Barry Gold, prior to PLAN confirmation about the relationship Barry Gold had with TBF, which is part of the transcripts in October and November 2002, pre plan confirmation. Demonstrating not only the intent to conceal, also, the intent of MNAT, Mr. Rosner and even Mark Kenney as counsel to the US Trustee office, where the Trustee's office had knowledge already of conflicts of Barry Gold, Paul Traub & ADA In re HomeLife De Dist 01-2412 in 2001. The shareholder petitioned Her Honor Walrath to amend the Plan, due to the great possibility that an undisclosed relationship existed that the PLAN would seem to indemnify. The SHOR deposing of Barry Gold on the stand about the possible relationship, stated to the Court that if such were proven to be undisclosed, they would have a "get out of jail free card". Whereupon Her Honor so ordered that the Plan be amended. to prevent such! Yet here we are with concrete testimony by the parties that an undisclosed relationship had, indeed, existed, that the parties intentionally with held that information pre PLAN confirmation, specifically the relationship that Barry Gold was questioned about at that time concerning TBF and Luria bankruptcy. Where the relationship not only existed, it was in existence in great detail and yet they remained silent about ADA in violation of the Code/Rule of LAW far beyond simple standing to the extent that other parties, the MOVANTS, all of whom would benefit by extensive

billings in the millions of dollar range, had knowledge of the relationship and remained silent.

28.  Additional egregiousness & overwhelming documentation of subterfuge is now readily apparent with the discovery of the Fact that Liquidity Solutions is co-debtor with Stage Stores ("EXHIBIT 3"). For Liquidity Solutions, (coincidently after May 2001) acquired many claims of the eToys DEBTOR Estate as shown in here in ("EXHIBIT 4") the PEDC confirmed Plan also contained a clause that permits the PLAN Administrator to settle items under $1 million without Court approval, including items such as the claims owned by Liquidity Solutions.

29.  MOVANTS have repeatedly fought our request to examine books and records. While MNAT remains silent about the fact that they worked with The Learning Center in the Merger with Mattel. The Learning Center had ownership by Bain and Mattel was the number one creditor of the DEBTOR, disclosure by MNAT of either would have disqualified MNAT from the outset. Fredrick Rosner assisted in halting the summary judgment that would have benefited the DEBTOR against Kid Board Gear, which has acquisition issues with Liquidity Solutions, that involves not only the $677,000 claim, it also included more than $100,000 in preferential. While we also have the Foothill/Wells Fargo entity pre petition loan of $40 million to the DEBTOR in November of 2000 that was paid back pre petition. Exactly the same issue as In re Bucyrus 94-20786 E D Wisc where Gellene was incarcerated and Milbank paid millions in disgorgement and lawsuits. Xorads, TBF and Barry Gold have relationships with Wells Fargo/Foothill. These issues mandate thorough examination of books and records.

30. The MOVANTS have all stated that the case is now to be closed after the dismissal of APPELLANT, except for the IPO litigations, therefore time is of the essence as it is only reasonable to assume that MOVANTS will seek to force a settlement that may not be in the best interest of the parties of interest as a necessary pathway to an endeavor to cover up and close the case.

31. The MOVANTS have all stated that the European matters are closed. Where we have the matter of the $9.1 million of overseas monies that remains, to anyone's satisfaction, unaccounted for. There also remains the issue that David Haddad intentionally with held the information about a $2million deposit, where this APPELLANT informed the Committee and TBF of such, being told by TBF that such was "no big deal". Thus far there has been no consistency, <u>whatsoever</u>, to the Trustee Quarterly Reports submitted by Barry Gold. As far as we can ascertain only $5 million has been returned from Europe. The money in Europe was all cash deposits.

### DETAILS OF APPELLANT STANDING

32. APPELLANT was originally brought in by the Creditors Committee Chairman (Please see EXHIBIT 2), where MOVANTS, drafted the contracts for APPELANTS company CLI specifically persuading APPELLANT not to seek counsel (Please refer again to the corroborative evidence of the Chairman in EXHIBIT 2), whereby MOVANTS became, in essence APPELLANT'S counsel of record.

33. MOVANTS also drafted APPELANT'S company contracts which contained the fact that MNAT would supply the paper work to the Court.

34. MOVANTS have demonstrated, repeatedly, subterfuge and contempt of the judicial process through repetitive non disclosures, such as MNAT referring in their Application about Learning Center, while failing, to this day, in revealing to the Court and parties of interest that the Learning Center was merged with MATTEL, the number one creditor of DEBTOR that MNAT worked with in the MATTEL acquisition of the Learning Center.

35. APPELLANT and APPELLANTS company CLI did the work it was contracted to do in good faith. It is now readily apparent that the MOVANTS had self designed motivations to defeat APPELLANT and it is extremely plausible that MOVANTS are punishing APPELLANT in retaliation. MOVANTS have repeatedly fought to halt the Court review of the merits of APPELLANTS claim to be compensated contractually for such as a hearing thereon would involve testimony of the facts mentioned above that will place MOVANTS in the position of pleading the 5th or testifying to their subterfuge. As such, with the Court approval of the work APPLELANT performed, where the results of this APPELLANTS endeavors provides greatly the very monies that the MOVANTS have billed the Estate for, APPELLANT has more than mere pecuniary interest in the DEBTOR. APPELLANT is entitled to be heard under Fed Rule of Civ Proc **23.1 Derivative Rights of Shareholder** (APPELLANT is the sole stock holder of CLI) **24 Right to Intervention** and **25 Substitution of Parties** (As CLI owes all monies to APPELLANT) which are within the CODE as Rules **7023.1, 7024** and **7025** respectively. While also having status as "person aggrieved" in that doctrine, along with the Code **503(b) Substantial Contribution.** APPELLANT also is bound by fiduciary responsibilities to protect the assets of the DEBTOR, such as disclosing to the Court and

Parties of Interest that Barry Gold and TBF had relationships with Bain/Michael Glazer/Jack Bush/Liquidity Solutions that the obvious potential for harm so readily exists which is demonstrated by the Liquidity Solutions, Kid Board Gear, Fred Rosner halting of the summary judgment the PEDC was to receive in the DEBTORS favor against Kid Board Gear one item of itself almost $1 million in worth.

36. Under both the "doctrines" of "unclean hands" and "aggrieved person" APPELLANT has substantial standing. The non disclosing parties should not be entitled to gain, then retaliate against APPELLANT as the MOVANTS drafted the contracts of APPELLANTS company and their hands remain, with continuous non disclosure "unclean". APPELLANT rights and standing under many statue's such as **Rule 7023.1 Derivative Right of Shareholder, 7024 Intervention, 7025 Substitution of Party** and Code **503(b) Substantial Contribution** which all make APPELLANT within standing under the "aggrieved person" established principals. APPELLANT is entitled to 503(b) Substantial Contribution on both the work performed that had Court approval and the time/expense involved in the discovery and processing the disgorgement of the offending parties. It would be an egregious miscarriage of justice to punish APPELLANT for blowing the whistle for APPELLANT trusting in the protection of the intent of the CODE and the integrity of the System which has gone to great lengths to be designed to provide against such actions to good faith work that the Court approved for the APPELLANT to perform.

37. Her Honor Walrath even supports such as Her Honor stated in the OPINION of October 4, 2005 that *"extraordinary circumstances"* are conclusive in this case and she further stated that *"Fed Rule of Civ Proc 60(b)(6) applies herein and that*

*"to hold otherwise would only serve to penalize* [APPELLANT] *for delay* [to stop the subterfuge] *that was beyond his* [APPELLANTS] *control and to reward conflicting attorney's"* [MOVANTS also Barry Gold].

## CONCLUSION

38. Whereupon APPELLANT has shown consistent, current, endeavors by the MOVANTS to keep facts germane to this Estate hidden whereby continuous non disclosures still exists by the offending parties to the knowledge of the Court and parties of interests. Such as Liquidity Solutions/Bain/Michael Glazer even after the command of the Court to come clean.

39. The very fact that Barry Gold and Paul Traub had a relationship with each other is irrefutable.

40. Barry Gold was a "Post Petition" employee of the DEBTOR as first "wind down coordinator" that is most assuredly a professional per the Code / Rule of law and standards set in the nation and particularly in Delaware Bankruptcy Court by His Honor Farnan. Even if the entitlement of "wind down coordinator" were not used, arguendo, the established "quantitative" and "qualitative" principals in all Circuits, including the 3rd Circuit are principals based upon "autonomy" and "authority". As Barry Gold was the "Sole" and "Chief" decision maker having also stated himself that Barry Gold is an extensive "38 year" professional in turnarounds, retail and liquidations, there is no premise, under the LAW, that one could find, Legitimately, to preclude Barry Gold from complying with Rule **2014, 2016** or Codes **101(14), 327(a)** etc. The upper 3rd Circuit

Court has held repeatedly that violations of **327(a)** mandate disqualification as **327(a)** is **"unambiguous"**!

41. MOVANTS have not addressed the matter of the Foothill Loan, the $40 million "pre petition" loan by Foothill, which is part of Wells Fargo to the DEBTOR, where the loan of the $40 million occurred in November 2000 and was paid off "pre petition" within all timelines for review, even after Barry Gold and Paul Traub have confessed that they have ongoing relationships with Wells Fargo that owns Foothill. CrossRoads LLC, the court approved Financial Consultant for the DEBTOR having been also paid millions, to this day remains silent about their connections to Wells Fargo/Foothill. Which is exactly comparable to In re: Bucyrus 94-20786 E D Wisc and the Gellene/Milbank Tweed matter whereupon the discovery of the failure of the firm Milbank and Tweed to review the preferential of the $35 million pre petition loan landed Gellene in prison and Milbank had to disgorge their entire $1.9 million. Furthermore a lawsuit against the Milbank resulted in additional millions to be paid in that case.

42. Barry Gold & TBF have failed to disclose their prior working relationship with Richard Cartoon who is the Overseas Financial Consultant basically in charge of the monies we can only ponder of/for the DEBTOR and that relationship goes all the way back to Luria where we now have documentation of extensive phone calls of TBF, Richard Cartoon and Barry Gold. This directly is in rebuttal to Barry Gold's false testimony that he was not at Luria when TBF was on the case of Luria.

43. APPELANT has standing as per the established doctrine of a "person aggrieved". Along with **Fed Rule of Civ Proc 23.1, 24 and 25**.

44. TBF, Mr. Rosner, Barry Gold, MNAT cannot testify or witness against APPELLANT as they did encourage APPELLANT not to seek counsel and that APPELLANT'S legal paperwork to the Court would be handled by them and submitted by MNAT/TBF to the Court. Which is corroborated by the EXHIBIT 2 which is the AFFIDAVIT of the Former Chairman of the Creditors Committee doing so for no benefit to himself at great personal concern and risk in the pursuit of Justice long after he retired from his company (MATTEL) and the work in the eToys matter.

45. The "unclean hands" doctrine applies here as even Her Honor Walrath has stated that "extraordinary circumstances" exists in the DEBTOR'S Estate as MNAT & TBF "intentionally" failed to disclose.

46. Her Honor Walrath also stated that due to the Fed Rule of Civ Proc 60(b)(6) – *to hold otherwise would punish[APPELLANT] and reward conflicting attorneys.*

47. Wherefore APPELLANT pray the Court to dismiss the MOVANTS Motions with "prejudice" and in so doing remand to the Bankruptcy Court that the PLAN section 5.2 that allows removal of the PLAN Administrator for "cause" has overwhelming evidence and necessity of reason to be implemented. That this APPELLANT and the SHOR be extensively involved in the approval/replacement of the PLAN administrator who remains the "sole" authority of the DEBTOR and those that have participation/control of the PLAN.

48. APPELLANT and shareholders, as a matter of jurisprudent pursuit of Justice must be allowed a detailed examination of books, records & all communications

between Barry Gold/TBF/MNAT/Mr. Rosner/Xroads etc, they are not entitled to any privilege.

49. Whereupon we also request that this Court refers the matter to the US Attorney's office, by taking Judicial Notice under Fed Rule of Evidence 201 of the facts in this case as the irrefutable evidence of intentional non disclosure is a "perpetration of Fraud upon the Court" and must be deterred for the sake of Integrity of the Judicial process and assurance of the public trust in the Integrity of the Bankruptcy System as a whole that has been injured, severally by the acts of subterfuge of the MOVANTS.

50. APPELLANT request the Court take Judicial Notice of the Facts, Barry Gold, MNAT, TBF, Xroads, Richard Cartoon and David Gatto all participated in the Barry Gold hiring. All parties have received extensive earnings that could not occur had their respective conflicts been disclosed. The LAW of 18 USC 3057, as well as the Federal Canon's of Judicial Conduct, along with 28 USC 586(a)(3)(F) exist to assure that the subterfuge that has occurred here have many checks and balances that legally mandate the halting thereof. The MOVANTS have prospered to the tune of $14 million thus far and there remains many items that offer additional "unclean hands" profit that have not been reviewed in detail. Disqualification must occur, Notification to the US Attorney office must occur, Mark Kenney as Attorney for the US Trustee office has failed miserably in protecting the equity holders, along with his fiduciary duty to assist the Court in not having to use 105(a) "sua sponte" to police the Court on it's own. Real harm has been done to APPELLANT, SHOR and all parties of interest that were not informed of the collaborative efforts to conceal the FACTS. Many miscarriages of Justice has occurred and the Fact that MOVANTS sought to continue to do such in KB

Toys is documented "proof positive" that NO sufficient deterrent has occurred. Wherefore APPELLANT prays the Court do the actions necessary to restore the public faith in the Judicial Process which has run amuck in at least 3 cases in the Bankruptcy realm.

Respectfully submitted the 12th day of January 2006.   /s/ Steven Haas

Respectfully resubmitted this 21st day of February 2006.   APPELLANT

Who is President 100 % owner CLI

This Document and the attached EXHJIBITS are testified by this APPELLANT Steven Haas, under penalty of perjury to be True and Correct this day of submittal to this Court again on March 9, 2005.

LII / Legal Information Institute

# U.S. Code collection

TITLE 28 App. > FEDERAL > ARTICLE > Rule 201

**Rule 201. Judicial Notice of Adjudicative Facts**

*Release date: 2005-09-29*

**(a) Scope of rule.—** This rule governs only judicial notice of adjudicative facts.

**(b) Kinds of facts.—** A judicially noticed fact must be one not subject to reasonable dispute in that it is either

(1) generally known within the territorial jurisdiction of the trial court or

(2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

**(c) When discretionary.—** A court may take judicial notice, whether requested or not.

**(d) When mandatory.—** A court shall take judicial notice if requested by a party and supplied with the necessary information.

**(e) Opportunity to be heard.—** A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.

**(f) Time of taking notice.—** Judicial notice may be taken at any stage of the proceeding.

**(g) Instructing jury.—** In a civil action or proceeding, the court shall instruct the jury to accept as conclusive any fact judicially noticed. In a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed.

Search this title:

Notes
Updates
Parallel authorities (CFR)
Your comments

*LII has no control over and does not endorse any external Internet site that contains links to or references LII.*