June 11, 2001

Mr. Barry Gold
c/o EBC I, Inc. f/k/a eToys, Inc.
12200 West Olympic Boulevard
Los Angeles, CA 90064

Dear Barry:

    This letter will serve to confirm the terms of your employment with EBC I, Inc., f/k/a eToys Inc. (the "Company").

    Subject to the further terms of this letter, your employment with the Company shall be deemed to have commenced as of May 21, 2001 (the "Commencement Date") and shall terminate in accordance with the provisions of this paragraph. As of the Commencement Date, your position with the Company shall be as Wind Down Coordinator and you shall retain such position until (i) the approval of your employment as an officer of the Company by order of the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), (ii) the retention by the Company of a directors' and officers' liability insurance policy with coverage satisfactory to you and the Company (the "D&O Insurance"), and (iii) approval of the Company's retention of such D&O Insurance by the Bankruptcy Court; provided, however, that if the conditions in the preceding clauses (i), (ii) and (iii) have not been satisfied on or before July 10, 2001, then you may terminate your employment with the Company upon three (3) days prior written notice to the Company. If, on or before July 10, 2001, the conditions in clauses (i), (ii) and (iii) of the preceding sentence have been satisfied or the conditions in clauses (ii) and (iii) have been satisfied and you have waived the condition in clause (i), then you shall be appointed as President and Chief Executive Officer of the Company and your employment with the Company will be for an initial term ending May 20, 2002. Such initial term shall automatically continue until and unless terminated by either you or the Company, with or without cause, upon giving the other party at least 30 days prior written notice.

    During the term of your employment, your base salary will be as follows:

- $40,000 per month for your first two months of employment;
- $20,000 per month for your next three months of employment; and
- $12,500 per month for each of your remaining months of employment.

Exhibit 1

## Barry Gold letter in Luria on employee severnce

SUBJECT: Severance Pay for Employees at Closing Stores

It is Luria's intention to pay severance pay to employees in the closing stores in accordance with the eligibility requirements outlined below:

Eligibility Requirements to Qualify for Severance

* Full time employees who have been with Luria's for a minimum of nine months at the time of their release will be eligible for severance.

* Employees must stay until the sale is over or until they are released

* Employees terminated for cause during the sale will not be eligible for severance.

* Employees who are transferred or are offered positions at other Luria's stores within reasonable commuting distance will not be eligible for severance.

### SEVERANCE SCHEDULE

| | | |
|---|---|---|
| 0 - 9 months | - | No Severance |
| 9 - 24 months | - | 1 week severance |
| 2 + years | - | 1 week + 1/2 week for every full year after the second year, up to a maximum severance payment of 7 weeks. |

Members of store management (Store Manager, Jewelry Manager, Merchandise Manager) will be eligible for a minimum of 2 weeks severance if they have been with Luria's for 9 months or more.

Severance will be paid after termination of employment thru Luria's regular payroll system.

*Barry Gold*

## SnapShot Luria & Sons Cartoon Traub and Gold notes

| | | | |
|---|---|---|---|
| | | | Gonzalez, M. Hernandez, W. Henry, G. Padron, E. Gorman, and D. Simard. |
| Sanchez | 09/15/97 | 2.0 | Visited the North Miami (12115 Biscayne Blvd.) location to observe that proper inventory procedures were being performed. Met with M. Winer, Tracey Kent, B. Gold, M. Gualtieri, and E. Morgan. |
| Evans | 09/23/97 | 1.8 | Discuss with P. Traub and M. Cohen reconciliation of GOB inventory. |
| Cartoon | 10/14/97 | 0.4 | Reviewed recovery analysis provided by A. Smith and compared with prior analyses. |
| Cartoon | 10/27/97 | 0.8 | Reviewed projections and recovery analysis prepared by A. Smith |
| Evans | 10/29/97 | 0.3 | Review memo regarding disposition of real estate. |
| Ward | 11/25/97 | 1.1 | Prepare updated real estate analysis showing the latest updates on various stores for company. |
| Ward | 11/26/97 | 0.9 | Update real estate analysis after conversation with R. Cartoon. |
| **Total Hours by PCD Code 50** | | **41.3** | |

| | | | |
|---|---|---|---|
| | | | information, and visit to company to review pre-petition transactions. |
| Cartoon | 09/04/97 | 0.5 | Telephone conversation with M. Fox, S. Balaschak and P. Singerman about offer, outstanding information requirements, Gob's, interest of Service Merchandise, auction of office and DC equipment, and next steps. |
| Cartoon | 09/05/97 | 0.2 | Telephone conversation with B. Evans about recent discussions with company and committee and activities to take place in Miami the following week. |
| Cartoon | 09/05/97 | 0.3 | Telephone conversation with B. Evans, M. Fox and P. Traub about agenda for following week, potential interest of Service Merchandise, and requirements of financial advisors. |
| Cartoon | 09/05/97 | 0.4 | Telephone conversation with J. Eidelstein and A. Friedman about alternatives, interest of other retailers, information needs for pre-petition transactions, sale of warehouse and office fixtures, and visit of H. Artime. |
| Cartoon | 09/05/97 | 0.3 | Telephone conversation with M. Berger about his work on pre-petition transactions, and tax issues. |
| Evans | 09/05/97 | 0.6 | Telephone conversations with counsel regarding offer from various parties (.3) and telephone conversation with |

officer of the Debtors, was engaged by this debtor to provide certain strategic restructuring advice. Upon information and belief, Mr. Gold played no role in the creditors' committee's selection and engagement of TB&F as its counsel.

FURTHER AFFIANT SAYETH NOT.

_____
Paul Traub

SWORN TO AND SUBSCRIBED BEFORE ME this 29th day of June, 2000, by Paul Traub who is personally known to me and who did take an oath.

_____
Name (printed)

Exhibit 5
Excerpt of Traub Supplemental in Stage / Liquidity
00-35080