

## AFFIDAVIT OF LISANDRO "LEE" CASTILLO

I, Lisandro "Lee" Castillo reaffirm now in June 2005 and says:

1. I was the Director of Corporate Credit at Mattel, Inc. until November 2001.

2. I was elected Chairperson of the Official Creditors Committee of eToys, Inc. ("eToys").

3. The Creditors Committee sought to engage the services of Collateral Logistics, Inc.("CLI") and Steve Haas ("Mr. Haas") in the eToys matter.

4. As Chairperson of the Official Creditors Committee I approved all negotiations on behalf of the committee.

5. Prior to eToys, Mr. Haas and his companies worked for other Creditors committees in which I was involved, such as ToyTime.com.

6. It was not uncommon to settle with Mr. Haas and his companies at the end of the case.

7. Both his non pro tunc contracts were done with my approval and input as Chairperson of the Creditors Committee.

8. As Chairperson of the Creditors Committee I asked Mr. Haas to abate the $125,000.00 commission that Michael Fox had negotiated down to $80,000.00 in the B. W. Ventures matter. Mr. Haas agreed under the sole condition that no other reductions would take place.

9. I am also aware of the stipulation that was signed by Mr. Haas as settlement on partial expenses shortly before my retirement from Mattel.
   a. The agreement was based on the understanding that it was to settle junior labor fees and establish a procedure going forward that the new CEO would accept in the future (Barry Gold was not present in the beginning of the case).
   b. CLI was always entitled to receive their fees net of all expenses, including but not limited to senior management salary.

10. I am aware that Mr. Haas was on location on a daily basis, generally more than 50 hours per week. It was never intended that his labor or time or that of CLI management would occur at a discounted fee.

11. CLI is directly credited with millions of dollars in additional returns to the Estate for which they have not yet been paid. Some of the additional returns are:
    a. CLI achieved a higher return for the Committee in the endeavor to sell the intellectual property to KB. It was on CLI's recommendation and insight that we sold the bulk assets to KB instead of Consolidated Stores (where Consolidated had a higher bid for goods only).
    b. CLI initiated the sale to Yellow Knife with was twice the return of other bidders. Yellow Knife paid to the Estate $500,000.00
    c. CLI did a lot of work in the endeavor to sell the FF&E and is entitled to the 20% commission on the sale even though the estate prevented them from completing the task.

12. I believe CLI not only obtained the $1 million they projected and was part of their contract, but, in addition boosted B W Ventures to $1.25 million and saved the Estate extended additional count and warehouse expenses.

13. CLI was always on target with projected returns and the removal of the FF&E. CLI is therefore entitled to all commissions earned on the sale of the FF&E.

14. CLI is owed additional funds beyond the last two payments of $4,000.00 and $31,000.00 received at the beginning of this year. At a minimum Mr. Haas salary should be paid either at a flat annual salary such as that of Barry Gold or at an hourly rate of $350.00 for an exceptional performance beyond what was required of Mr. Haas or CLI.

Exhibit 2
part A

15. Where I, Lisandro "Lee" Castillo now state, after this long elapsed time, on an item I wish had been settled properly long ago, that it is currently June 2005 and unless Mr. Haas or CLI has received a payment from the Estate since March of 2002, that CLI and Mr. Haas are owed commissions, success fees, etc on multiple sales that were part of the CLI agreement. Particularly the Domain Name of eToys to KB Toys, FF&E, assets and more. While also being owed, for a job I will testify to and affirms now was excellent agreed to by the firm of Traub Bonacquist & Fox and myself as Chairman of the Creditors Committee.

16. Furthermore, it appears that CLI and Mr. Haas are now paying a penalty for services rendered to the Estate of eToys and the Creditors Committee, where Mr. Haas sought for the negotiations to provide for his entity to have a lawyer and accountant paid for. Where both I and the firm of Traub Bonacquist discouraged Mr. Haas from the need of counsel. Where we mutually agreed that the firm of Traub Bonacquist & Fox would supply any necessary items to the Court and I, believed it was to be part of the contract of CLI. Part of which never occurred because both contracts for CLI were basically done after the fact of sales or endeavors and the Amended contract for CLI, which was to define the commission schedules had to wait for sales to be redesigned, due to halted auction processes. Making what Mr. Haas and I believed to be moot. As the counsel for the Estate and the Committee, stated they were inundated with paper work and they would inform I or Mr. Haas when paperwork was to be completed. It was not until after I retired from Mattel that Mr. Haas told me he was meeting with resistance, even though Michael Fox of Traub Bonacquist & Fox and Barry Gold both gave their words to me that CLI and Mr. Haas would be correctly settled at the end of 2001. It was at that time I informed Mr. Haas that it was apparent that my input to those parties was ignored and suggested he seek counsel in Dec of 2001 in order to enforce the original agreements.

17. Furthermore, I have somewhat followed the case from a distance and it has been represented that Barry Gold and the firm of Traub Bonacquist & Fox had a relationship that they have admitted to and state has no bearing on any matter(s) at hand. Whereby I, Lisandro "Lee" Castillo do hereby state and affirm that such is false. Had I had any inkling, whatsoever, that Barry Gold was anywhere connected to any party of the case, I would have, as a fiduciary duty sought advice how to correct the matter and would have not approved the hiring of Barry Gold. I had direct discussions with Paul Traub of the firm of Traub Bonacquist & Fox regarding the hiring of Barry Gold and I am amazed at the level of deception that has occurred and the apparent lack of interest to halt it.

Dated: 6/11/05

_____
LISANDRO "LEE" CASTILLO

SUBSCRIBED AND SWORN TO BEFORE ME
THIS 11th DAY OF JUNE 2005
BY LISANDRO LEE CASTILLO
_____
NOTARY PUBLIC

[Notary seal: ALAN H. BEAVER, COMM. #1480911, NOTARY PUBLIC - CALIFORNIA, LOS ANGELES COUNTY, My Comm. Expires Mar. 20, 2008]

Exhibit 2
Part B